## Case No. 16,148.

UNITED STATES v. REPUBLICAN BANNER OFFICERS.

[11 Pittsb. Leg. J. 153.]

Circuit Court, D. Tennessee.[1]  1863.

REBELLION—CONFISCATION ACTS—CONSTITUTIONALITY AND CONSTRUCTION.

Construction of the confiscation act of 1861 [12 Stat. 319]. It is constitutional, and applies to real estate.

Before CATRON, Circuit Justice, and TRIGG, District Judge.

TRIGG, District Judge. This cause is submitted to the court upon a motion to quash the information filed by the United States attorney, upon the ground that the real estate mentioned therein was not subject to seizure by virtue of the act of August 6, 1861, under which the proceeding in this cause has been instituted.

The question then to be decided by this court is: Does the act of August 6, 1861, embrace real estate within its provisions, and make that, as well as personal property, for the causes mentioned in said act, a subject of seizure, confiscation, and condemnation? It

---

[1] [District not given.]

is not denied that the words of the act, "any property of whatsoever kind or description," are very comprehensive, and in their terms would embrace real, as well as personal, property. But it is insisted that congress did not intend to include all kinds of property by the broad and comprehensive language employed, and that this is manifest from the words used in the act in denouncing the penalty against the property used or employed, or intended to be used or employed, as therein stated. The act declares that "all such property is hereby declared to be lawful subject of prize and capture wherever found"; and it is argued that the words "prize and capture" are purely technical in their meaning, and apply alone to personal property, real estate not being a subject of prize and capture, and that these words, therefore, must be understood to have been used in their technical sense. And the words "prize and capture," being thus technical in their meaning, must control the previous words, and limit and confine their operation to that description of property to which "prize and capture" are applicable.

The words of the statute are ordinarily to be understood in their common, popular sense, regard being had to the connection in which they are used, and the subject to which they relate. But it is equally a rule of construction, as contended for by the counsel of the claimants, that technical words must be understood in their technical sense, as applicable to the subject of the statute in which they are used. They must be technical to the subject of the particular statute, and not to any other subject.

The more common application, however, of this rule is to words and phrases which have obtained a peculiar legal signification. In law phrase many words have an exact technical sense, unlike or more limited or extended than their popular ones; and in this sense they are ordinarily to be construed in statutes. 1 Bish. 368–370.

Now let us test the application of these rules to the statute we are considering, and see how far those technical words, "prize and capture," on which the argument of the counsel of the claimants is based, should be permitted to govern its construction. The question presented to the court is not without difficulty, but it is clear, from what has been before stated, that, in giving a construction to this statute, it will not do to be limited by the mere technical sense of the words "prize and capture," for in that case it is apparent that a large and distinct class of property would be excluded from its operation. And it is manifest, from the reading of the act, that property, other than such as might be captured on the sea, was intended to fall within its provisions. For the act,[*] independent of the sweeping provision, "any property of whatsoever kind or description," expressly declares that "all such property is hereby declared to be lawful sub-

ject of prize and capture wherever found." To give a just construction, therefore, to the statute, we must ascertain what the congress intended, and to do this, after looking at the words of the act itself, we may look to the surrounding facts and circumstances which would probably have influenced congress in its passage. And in order that technical words used in the act may not be deprived of their just weight in fixing its construction, we must regard the subject of it, and see whether those technical words are technical to its subject, for if they are, they must be understood in their technical sense. If the words used are not technical to the subject of the act, they are improperly or inaccurately used, and it is a rule of construction that if words or expressions are used inaccurately, they will be construed in the sense intended, where that sense appears upon the whole face of the act. Now, what is the subject of the act we are considering? It is the confiscation of property used for insurrectionary purposes; and it is difficult to perceive that the technical words relied upon to govern the construction of the act are or can be technical to that subject. For by said act a new class of forfeitures, if we may so term them, is created, growing out of the present unhappy condition of our country, and which were never before known to our laws. These technical words, then, cannot control us in our construction, and we must look to the whole body of the act, ascertain the intention of congress in passing it, and construe the technical words "prize and capture" in the sense intended by them, and not in the strict legal sense in which they are usually understood.

The act declares that if "any person or persons, his, her, or their agent, attorney, or employee, shall purchase or acquire, sell or give any property of whatsoever kind or description, with intent to use or employ the same, or suffer the same to be used or employed, in aiding, abetting or promoting such insurrection or resistance to the laws, or any person or persons engaged therein; or if any person or persons being the owner or owners of any such property, shall knowingly use or employ the same as aforesaid, all such property is hereby declared to be lawful subject of prize and capture wherever found, and it shall be the duty of the president of the United States to cause the same to be seized, confiscated and condemned." The language of this act is broad and comprehensive, and looking to the surrounding facts and circumstances at the time, there being then a formidable rebellion in progress, the intention of congress, in enacting this law, must have been to deter persons from so using and employing their property as to aid and promote the insurrection, and thereby to diminish and weaken the power of the Rebellion—and perhaps it was also intended, by taking from him his property so unlawfully employed, to inflict

upon the party a penalty for his misconduct in thus aiding and promoting a resistance to the laws. What, then, is included, it may be asked, under that broad language of the statute, "any property of whatever kind or description," which is lawful subject of prize and capture, and liable to be seized, confiscated and condemned? We answer that it is manifestly any property of whatever kind which is capable of being used or employed in aiding, abetting, or promoting the insurrection.

The only question, then, is whether real estate can be so used or employed, for if it can, there is no more reason why it should not be seized or confiscated than any other description of property. Certainly the mischiefs to result from such use of it would be as great as those from the use of property of any other kind. Suppose that a person, with the avowed purpose of aiding the insurrection, should purchase a piece of ground suitable for his object, and proceed to erect upon it the necessary buildings and machinery for the manufacture of guns and other small arms, and he does proceed, in accordance with his previous intent, to the manufacture of such weapons of war to supply the rebel army—can it be contended that such property, real estate if you choose, is not used, and as effectually used, in aiding, abetting, or promoting the insurrection as any movable property whatever? And, if so, why should it not be as much a subject of confiscation as any other? All property used in its ordinary and legitimate mode is exempt from the operation of the act, but the moment it is purchased or acquired, sold or given, with intent to use or employ it in aiding the insurrection, or if the owner knowingly and intentionally uses or employs his property for such a purpose, it immediately becomes the subject of seizure and condemnation under the act, whether it be real or personal property. The words "prize and capture," in the act, were intended to have the same meaning which is given to the word "seizure" in the act of July 17, 1862 [12 Stat. 589], and to apply as well to real as personal property.

The second section does not effect or in any manner conflict with this construction of the act. That section only provides for the condemnation of the property seized, and directs in what courts it should be made. It declares "that such prize and capture shall be condemned in the district or circuit court of the United States having jurisdiction of the amount, or in admiralty in any district in which the same may be seized, or into which they may be taken and proceedings first instituted." The plain interpretation of this provision is, that no doubt it was so intended, that the district court, and where the value of the property seized shall amount to the sum of five hundred dollars, the circuit court, concurrent with the district court, shall have cognizance of such seizure when the same shall be made on land, or on waters not navigable from the sea by vessels of ten or more tons burden. But if the seizure be made upon the high seas, or on waters navigable from the sea by vessels of ten or more tons burden, then the proceedings must be instituted in admiralty, and, of course, in the district court, which, by the act of 1789 [1 Stat. 73], has exclusive cognizance of admiralty cases.

The question raised by claimant's counsel in the closing argument, as to the constitutionality of the act, was not made upon the original motion as the same was entered, and was not argued on behalf of the United States. No authority, however, was produced, and it seems to me that the arguments relied on to sustain its constitutionality would be as applicable to any other law of congress imposing the penalty of forfeiture as to the act we are considering.

Upon the whole, I am of opinion that the information filed in this case ought not to be quashed.